FILED
05/01/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 3, 2019 Session

## IN RE ANNA G.

**Appeal from the Chancery Court for Overton County**
**No. 17-CV-52     Ronald Thurman, Chancellor**

_____

### No. M2018-01456-COA-R3-PT

_____

A mother's parental rights were terminated based on the ground of abandonment by willful failure to support pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). The mother appealed, and we reverse the trial court's judgment. Although the mother did not provide cash to the child's guardians, she spent a portion of her disposable income that was not insignificant on the child during the relevant four-month period, thereby precluding the petitioners from proving abandonment by clear and convincing evidence.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Laurie A. Seber, Cookeville, Tennessee, for the appellant, Jaime W.G.

Mark E. Tribble, Cookeville, Tennessee, for the appellees, Michael G. and Barbara G.

Andrea McLerran Ayers, Livingston, Tennessee, Guardian Ad Litem.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In this parental termination case, the paternal grandfather and his wife ("Petitioners") are seeking to terminate the parental rights of Anna G.'s mother, Jaime G. ("Mother").[1] Mother and Michael G. ("Father") were teenagers when Anna was born in

_____

[1] Petitioners sought to terminate both the mother's and father's parental rights to Anna. The trial court terminated both parents' rights, but the father did not appeal the termination of his rights. Because Mother is the sole appellant, we will not address the trial court's termination of the father's rights.

July 2007. In November 2008, the Department of Children's Services ("DCS" or "the Department") filed a motion in the Juvenile Court for Putnam County to have Anna adjudicated dependent and neglected. The Department placed Anna with Petitioners when she was about eighteen months old. An adjudicatory and dispositional hearing took place in September 2009 during which Anna was determined to be dependent and neglected, and she remained in Petitioners' custody. The Department moved to close Anna's case in June 2010, stating that its involvement with the parents ceased in December 2009 and that the parents had not taken the steps necessary to have Anna returned to their care. The juvenile court filed an order on October 13, 2010, closing the case and ordering that Anna's custody would remain with Petitioners.

On August 8, 2017, Mother sought to reopen the juvenile court case by filing a petition seeking increased visitation with Anna, unsupervised contact, and a restoration of custody. The following day, on August 9, 2017, Petitioners filed a petition seeking to terminate Mother's and Father's parental rights.[2] Petitioners asserted just one ground for termination: abandonment by willful failure to support pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i).

This case was tried over a period of three days at the end of May and beginning of June 2018. The trial court entered a decree terminating Mother's and Father's parental rights on July 11, 2018. It held that the Petitioners proved by clear and convincing evidence that "the parents have abandoned Anna [G.] pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and Tenn. Code Ann. § 36-1-102(1)(A)(i)" because they willfully failed to contribute to Anna's support or make reasonable payments towards her support for more than four (4) consecutive months prior to the filing of the termination petition. The court then determined that Petitioners established by clear and convincing evidence that terminating Mother's and Father's rights was in Anna's best interest. Mother appeals the termination of her rights, arguing that the trial court erred in ruling that the evidence clearly and convincingly showed that (1) she abandoned Anna by failing to pay child support pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i) and that (2) terminating her parental rights was in Anna's best interest.

## II. STANDARD OF REVIEW

The Tennessee Supreme Court has described the appellate review of parental termination cases as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo

---

[2]Mr. G., one of the petitioners, testified that he filed the termination petition in response to Mother's and Father's separate efforts to regain custody of Anna.

on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

The termination of a parent's rights is one of the most serious decisions courts make. As the United States Supreme Court has said, "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Santosky v. Kramer*, 455 U.S. 745, 787 (1982). "Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005), and of "severing forever all legal rights and obligations of the parent or guardian," Tenn. Code Ann. § 36-1-113(l)(1).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995) (citing *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993)). This right "is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d at 521 (citing U.S. CONST. amend. XIV, § 1; TENN. CONST. art. 1, § 8). While this right is fundamental, it is not absolute. *Id.* at 522. The State may interfere with parental rights in certain circumstances. *Id.* at 522-23; *In re Angela E.*, 303 S.W.3d at 250-51. Our legislature has listed the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists, *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "'Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings.'" *In re Carrington H.*, 483 S.W.3d at 522 (quoting *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted)). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). As a reviewing court, we "must 'distinguish between the specific facts found by the trial court and the combined weight of those facts.'" *In re Keri C.*, 384 S.W.3d 731, 744 (Tenn. Ct. App. 2010) (quoting *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007)). Then, we must determine "whether the combined weight of the facts . . . clearly and convincingly establishes all of the elements required to terminate" a parent's rights. *Id.* (citing *In re Tiffany B.*, 228 S.W.3d at 156, and *In re S.M.*, 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004)). "When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)).

Once a ground for termination is established by clear and convincing evidence, the trial court or the reviewing court conducts a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005), and *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

## III. ANALYSIS

The only ground for termination that Petitioners asserted against Mother was abandonment by failure to pay support. *See* Tenn. Code Ann. §§ 36-1-113(g)(1) and Tenn. Code Ann. 36-1-102(1)(A)(i). Section 36-1-102(1)(A)(i) defines abandonment, in part, as a parent's willful failure to support or make reasonable payments towards the support of a child for a period of four consecutive months immediately preceding the filing of a termination petition.[3] A parent's "support" or "reasonable payments toward

---

[3]The statute defining "abandonment" was amended effective July 1, 2018; as amended, Tenn. Code Ann. § 36-1-102(1)(A) no longer includes the term "willful" in its definition of "abandonment." Instead, Tenn.

such child's support" must be "more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). "Token support" is defined as "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). The word "means" in this context refers to a parent's income as well as his or her resources for the payment of debts. *In re Adoption of Angela E.*, 402 S.W.3d 636, 641 (Tenn. 2013) (citing *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *11 n.24 (Tenn. Ct. App. June 3, 2003)).

"Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *In re Audrey S.*, 182 S.W.3d at 863. A parent's failure to support is "willful" if he or she '"is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support."' *Dep't of Children's Servs. v. Culbertson*, 152 S.W.3d 513, 524 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d at 864 (citations omitted). If a parent's failure to support is out of his or her control, that parent's failure will not be deemed "willful." *In re Adoption of Angela E.*, 402 S.W.3d at 640. Whether a parent has failed to support a child is a question of fact, but whether a parent's failure to support a child was willful is a question of law. *Id.*; *see also In re Alysia S.*, 460 S.W.3d 536, 566 (Tenn. Ct. App. 2014).

As the parties filing the termination petition, Petitioners had the burden of proving by clear and convincing evidence that Mother abandoned Anna by willfully failing to support or to make reasonable payments towards her support during the relevant four-month period. *In re Bernard T.*, 319 S.W.3d at 596; *see* Tenn. Code Ann. § 36-1-102(1)(A)(i). Petitioners filed the petition to terminate Mother's and Father's parental rights on August 9, 2017. Thus, the relevant four-month period in this case runs from

---

Pub. Ch. 875, § 2, codified at Tenn. Code Ann. § 36-1-102(1)(I), makes the absence of willfulness an affirmative defense to abandonment for failure to visit or support. To establish this defense, the parent (or guardian) must prove by a preponderance of the evidence that the failure to visit or support was not willful. Because this change is substantive rather than procedural or remedial, however, the amended statute does not apply retroactively to this case. *See In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004). Instead, this case is governed by the law in effect when the termination petition was filed in August 2017.

April 9 through August 8, 2017. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (explaining that statutory four-month period covers four months preceding day termination petition was filed and does not include day petition was filed). Petitioners were required to prove that Mother "had the capacity to pay support but made no attempt to do so and did not possess a justifiable excuse." *In re Adoption of Angela E.*, 402 S.W.3d at 641.

At the time of trial, Anna had been living with Petitioners for about nine and a half years. Mother testified that she offered Petitioners cash at different times over the years to help out with Anna's expenses, "but they were not receptive of it." Mother testified as follows:

> Q. Did [the Petitioners] ever ask you for child support?
>
> A. No, they did not.
>
> Q. And did you try to give them child support?
>
> A. I have.
>
> Q. Okay. And was that over the course of Anna's time with them or a certain year or - -
>
> A. It was over the course of it. I have offered on multiple occasions, it was within a certain time frame. It was just while they had her, obviously. But it wasn't pinpointed to a specific year or anything. I don't remember the exact dates or conversations that were had.

At another point during the trial, Mother was asked when, specifically, she offered Petitioners cash, and she responded:

> It's been various times throughout - - more - - not very recently because, you know, I got told no so many times that I just feel like I had stopped trying to give them cash and just went with other options.

Mother explained that the "other options" she referred to included school supplies, which she purchased for Anna before the start of school, and clothes. Focusing on the four-month relevant time period, Mother testified that she purchased a charm bracelet and charms as a fourth grade graduation gift in May 2017, which cost "somewhere around $100." Mother testified further as follows:

> A. I have bought her clothes and a backpack and some like nail polish and other little things for her birthday, clothes that she could wear to school and

- 6 -

a new backpack that she had been asking for forever, so . . .

Q. And do you remember the cost of the backpack?

A. It was like $200 for the backpack and the matching wallet.

. . . .

Q. Okay. Anything else that you bought during that time period?

A. I got her school supplies. I got her a baby car seat and stroller for her baby dolls. We did a mommy and me date night in June and –

Q. You did a what? I'm sorry.

A. A mommy and me date night in June of that year where I got the tickets and T-shirts and we got raffle tickets while we were there and some balloon animals, cotton candy-type things. And I made us grass skirts because it was a Hawaiian theme . . . .

Q. Do you know how much that cost?

A. Altogether, I know it was well over $100 because the shirts themselves were like $36 . . . .

Mother also testified that she spent about $80 on school supplies in July. Mother provided copies of her receipts for the graduation gift, school supplies, backpack and wallet, toys, and the June date night, all of which totaled $539.71.

Mother further testified that she planned Anna's birthday party at Mellow Mushroom and Dave & Buster's, which cost "about $55," not including the cake Mother made, which cost "at least $30." When asked whether she had ever given Anna cash, Mother answered that she gave Anna some gift cards from Kohl's, Claire's, iTunes, and Payless as part of her birthday present. She testified that the total cost of the gift cards was "somewhere around $100 to $120." Mother explained that the purpose of some of the gift cards was for Anna to get herself clothes to wear to school. Mother estimated that she spent a total of "about $800" on Anna during the relevant four-month period. Petitioners do not dispute this figure.

Mother testified that her net income was about $350 per week during the four-month period at issue. She earned between $7.50 and $8 per hour from April through part of July 2017, working for an automobile parts retail store. Mother worked for an insurance agency from sometime in June until the beginning of August 2017. The

evidence showed Mother earned approximately the same hourly wage working for the insurance company. Mother also had about $300 in a savings account.

Mother testified that she was living with her grandfather during the relevant four-month period and that she was not responsible for paying any rent. She helped clean the house and spent between $25 and $50 monthly on cleaning supplies and approximately $250 for food each month. Mother had a car, and she spent $600 each month to cover the car payments and insurance during the relevant period. She testified that gas for the car cost her between $80 and $100 each month.

When she was asked about other expenses she had, Mother replied that she had outstanding medical bills and student loans and that she was trying to work out payment plans for those expenses. She also testified that she paid her attorney $1,500 as a retainer and filing fee in July or August 2017 when she decided to file the petition in juvenile court to increase her visitation with Anna, have unsupervised visits, and possibly restore Anna's custody to her.

Michael G., one of the petitioners, testified that he never told Mother or Father that he did not want child support, and he denied that either of them ever offered him "any monetary cash support for their child." Barbara G., the other petitioner, also testified that she had received no offers of monetary support from either Mother or Father. Petitioners did not dispute Mother's testimony regarding the items and support she provided Anna or the money Mother spent for Anna's birthday or for the "mommy and me date night" during the four-month period at issue.

Mother and Father were married when Anna was younger, but they were not married at the time of trial. In contrast to Mother's low earnings, Father's annual income for 2017 was $91,720. The trial court seemed to consider Mother's and Father's income together in reaching the conclusion that their support of Anna during the relevant four-month period was "token." The court wrote the following in its final decree:

> j.      Both parents did provide evidence of providing some support during the time period. It mainly consisted around gifts at holidays and for the child's birthday. The child's birthday was during the four-month time frame in question. The parents did provide a birthday party and some clothing, but the Court finds said support was "token" under the Statute.
>
> k.      The parents have not provided support to the caregivers for lights, gas, water, food, clothing during the vast majority of the child's life, nor during the four month period in question.

1.      Both parents testified that they had offered to pay support, but neither parent testified that they offered any support to the Petitioners in the four-month period prior to filing this Petition.

. . . .

n.      In weighing the issue of the parents' offer to pay support against the Petitioners' denial, the Court finds the testimony of Michael [G.]'s more credible in that he was having to work two jobs to make ends meet to pay for not only his other children, but the child in question in this case.

In arguing that Mother abandoned Anna by willfully failing to pay support, Petitioners focus largely on the early years when Anna was living with them, asserting that Mother failed to provide diapers or formula for Anna. For purposes of proving the ground of abandonment by willfully failing to provide child support, however, the relevant time period is limited to the four months preceding the date when the termination petition was filed. Petitioners contend that Mr. G. was required to work two jobs to support Anna and his other children. Mr. G. testified that he has not worked a second job since 2012 or 2013, and Petitioners' counsel conceded at oral argument that Mr. G. was not working two jobs during the relevant four-month time period. Thus, evidence of Mr. G.'s working two jobs is irrelevant for purposes of proving the ground of abandonment. Likewise, the court's finding that the parents failed to contribute to Petitioners' costs for "lights, gas, water, food, clothing during the vast majority of the child's life" is irrelevant for purposes of establishing the ground of abandonment because only the four months before the termination petition was filed are at issue.

There is no dispute that Mother did not give Petitioners cash to help support Anna during the relevant four-month period or offer to give them cash during this period. The parties dispute whether Mother offered Petitioners cash when Anna was younger, and the trial court credited Petitioners' testimony over Mother's on this issue. We defer to the trial court's credibility determination with regard to this issue and conclude that Mother is unable to show her efforts to give Petitioners cash were thwarted by their refusal to accept her offers. *See Kelly*, 445 S.W.3d at 692 (stating appellate courts afford trial courts deference when reviewing issues hinging on witnesses' credibility); *In re Colton R.*, No. E2016-00807-COA-R3-PT, 2017 WL 499439, at *12 (Tenn. Ct. App. Feb. 7, 2017) ("It is well-settled in Tennessee that a parent who attempts to visit and maintain a relationship with the child, but is 'thwarted by the acts of others and circumstances beyond his control,' cannot be found to have willfully abandoned the child.") (quoting *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)).

Petitioners rely on three cases to support their argument that Mother provided only token support to Anna. In the case *In re Gabriel B.*, No. W2017-02514-COA-R3-PT, 2018 WL 3532078 (Tenn. Ct. App. July 23, 2018), the father testified that he had access

to $16,000 monthly and that he provided toys and snacks to his child during the relevant four-month time period. *In re Gabriel B.*, 2018 WL 3532078, at \*5. The father testified that he spent one to two hundred dollars on gifts and snacks for his child each time he saw him. *Id.* The case does not indicate that the father provided receipts for any of the alleged purchases, and the Department's records of the father's supervised visits did not support the father's testimony that he brought gifts and snacks to each visit. *Id.* We affirmed the trial court's conclusion that the few gifts the father provided his child constituted merely "token support" in light of the father's reported level of income. *Id.* at \*7.

The second case the Petitioners rely on is *In re Brantley B.*, No. M2016-02547-COA-R3-PT, 2017 WL 4877456 (Tenn. Ct. App. Oct. 30, 2017). In that case, the mother paid no child support during the relevant period but argued that the trial court "erred in failing to consider her testimony that she provided toys, books, a backpack, candy, and clothes, as well as gifts on various holidays" to counter any finding of willfulness. *In re Brantley B.*, 2017 WL 4877456, at \*4. The evidence revealed that money the mother earned that could have gone towards support of her child "was used to support her addiction." *Id.* The opinion does not indicate that the mother provided receipts establishing the amounts she actually spent on the child, so it could not be determined whether the amount the mother spent on the child was meaningful under the circumstances. We affirmed the trial court's holding that the mother's support was no more than token support under the statute. *Id.*

The final case the Petitioners rely upon is *In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151 (Tenn. Ct. App. June 28, 2018). In that case, the mother had a monthly income of $800 and monthly expenses of approximately $150. *In re Keilyn O.*, 2018 WL 3208151, at \*7. The mother in that case did not pay any formal child support, but there was evidence that she bought her children school supplies, shoes, backpacks, groceries, and soap. *Id.* at \*2. The trial court found that the mother purchased "an unspecified amount of groceries and school supplies" for her children, which it classified as "token." *Id.* at \*7. We found that the evidence did not preponderate against this finding. *Id.* As was the case in *In re Gabriel B.* and *In re Brantley B.*, the opinion does not reflect that the mother introduced evidence of the amount of money she spent on the groceries and school supplies in the relevant four-month period, with the result that the trial court could not determine whether the mother's contribution to the children's support was meaningful under the circumstances.

In the present case, the trial court found Mother had between $150 and $300 per month in disposable income that she could use to pay child support. The evidence showed that Mother spent approximately $800 on Anna over the relevant four-month period, which averages out to about $200 per month.[4] Petitioners point to no case law

<hr>

[4]Mother introduced a child support worksheet as an exhibit at trial showing that her monthly child support

that states a parent is required to spend every disposable dollar on his or her child to avoid having his or her parental rights terminated, yet they contend Mother's rights should be terminated because she did not spend more on Anna during the relevant period.

We find this case is similar to *In re Alysia S.*, 460 S.W.3d 536 (Tenn. Ct. App. 2014). In that case, the mother had not made a monetary child support payment in the four months preceding the filing of the termination petition. *In re Alysia S.*, 460 S.W.3d at 565. The mother was not a high wage earner and had other financial obligations she was required to meet during the relevant time period, similar to Mother. *Id.* at 567-68. The mother testified that she sent her child "three to four outfits, shoes, socks, underwear, and vitamins" during the relevant time period, *id.* at 568, and the record showed that she brought gifts and snacks to a supervised visit during this same period, *id.* at 570. The trial court recognized that the mother did not make child support payments because she used her income to pay bills and because the foster parents had told her previously not to pay them child support. *Id.* at 568-69. Like Mother, who had legal bills to pay in an effort to increase her time with Anna, the mother in *In re Alysia S.* had legal bills to pay in an effort to defend a dependency and neglect petition. *Id.* at 571. The trial court terminated the mother's parental rights, and we reversed that decision on appeal, writing:

> The evidence in this case falls short of meeting [the clear and convincing] standard. The evidence presented by [the petitioners] simply does not produce a firm belief or conviction, in our minds, that Mother, during the four month period, had the capacity to support Alysia, made no attempt to do so, and had no justifiable excuse for not doing so. We hold that the evidence in this case does not support a finding that Mother intentionally abandoned Alysia, and we therefore reverse the trial court's finding that this ground for termination was proven by clear and convincing evidence.

*Id.* at 572.

Unlike the cases upon which Petitioners rely, Mother presented evidence of her wages and expenses during the relevant four-month period, and she presented proof of the purchases she made in support of Anna. No evidence was introduced that Mother used any of her wages on illegal drugs, as was the case in *In re Brantley B.*, 2017 WL 4877456, at *4, or that she lived an extravagant lifestyle.[5] Petitioners filed their termination petition one day after Mother filed a petition to obtain unsupervised time, and possibly custody, of Anna, and they admitted that they filed their petition in an effort to

---

obligation according to the child support guidelines would have been $236 during the relevant time period.

[5]The record shows that the only entertainment expense Mother had during the relevant time period was a $14 monthly subscription to Netflix.

prevent losing custody of Anna. Mother clearly wants to be a part of Anna's life, and we find that the money Mother has spent in support of Anna during the relevant four-month period, which averages out to about one-quarter of her net income, does not qualify as "token" under the statute. *See In re Z.J.S.*, 2003 WL 21266854, at *11 ("A parent's financial support of his or her child will not be deemed to be 'token' unless it is 'insignificant' in light of the parent's 'means.'") (quoting Tenn. Code Ann. § 36-1-102(1)(B)).

We conclude that the Petitioners have failed to show by clear and convincing evidence that Mother abandoned Anna within the meaning of Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i) and reverse the trial court's judgment terminating Mother's parental rights to Anna.[6] The parties should bear in mind that this opinion is limited to reversing the trial court's decision terminating Mother's rights to Anna and does not alter or affect the juvenile court's October 13, 2010 decision placing Anna into Petitioner's custody.

## IV. CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the appellees, Michael G. and Barbara G., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[6]Because we conclude that Petitioners failed to prove that Mother abandoned Anna, the best interests analysis does not come into play.